**SHAWN M. O'NEIL, OSB No. 913880**
smo@shawnoneil.com
**O'Neil Law LLC**
8755 SW Citizens Drive, Suite 202
Wilsonville, Oregon 97070
Telephone: 503/570-8755

**MATTHEW C. ELLIS, OSB No. 075800**
matthew@employmentlawpdx.com
**Matthew C. Ellis, PC**
621 SW Morrison St Ste 1025
Portland OR  97205
Telephone: 503/345-5407

Of Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## EUGENE DIVISION

| | |
|---|---|
| **DANIEL TREJO TELLEZ and GUADALUPE DIAZ,** individuals,<br><br>  Plaintiffs,<br><br>  v.<br><br>**OREGON'S WILD HARVEST, INC.,** an Oregon Domestic Business Corporation; and **PAMELA MARTIN-BURESH,** an individual,<br><br>  Defendants. | CASE NO.  6:23-cv-553<br><br>**COMPLAINT FOR DEPRIVATION OF CIVIL RIGHTS**<br><br>**Jury Trial Demand** |

## I.  JURISDICTION AND VENUE

1. This is an action for damages for violations of state and federal discrimination laws. This court has jurisdiction over Plaintiffs' federal claims under 28 U.S.C. § 1331 and 28 USC § 1343(3) and (4).  This court has supplemental jurisdiction of Plaintiffs' state law claims under 28 USC § 1367.  Both federal and state law claims alleged herein arose from a common

nucleus of operative facts, and the state claims are so related to the federal claims that they form part of the same case or controversy such that the actions would ordinarily be expected to be tried in one judicial proceeding.

2. Venue is proper in this district and division pursuant to 28 U.S.C. § 1391 and LR 3-2 in that the claims and events giving rise to this action alleged herein occurred in the State of Oregon, County of Deschutes.

## II.  PARTIES

3. Plaintiffs are legal residents of the State of Oregon. Plaintiff Daniel Trejo Tellez (hereinafter "Mr. Tellez") was born in Mexico, is a legal resident of the United States and is a Brown, Hispanic male. Plaintiff Guadalupe Diaz (hereinafter "Ms. Diaz") was born in Madras, Oregon and is a Brown, Hispanic female.

4. Defendant Oregon's Wild Harvest is an Oregon Domestic Business Corporation with a principal place of business in Redmond, Oregon.  Defendant Oregon's Wild Harvest, Inc. (hereinafter "Defendant Wild Harvest") was Plaintiffs' employer at all material times.

5. At all material times, Defendant Pamela Martin-Buresh aka Pamela Martin aka Pamela Buresh (hereinafter "Martin-Buresh") was founder, co-owner and a corporate officer of Defendant Wild Harvest, and participated in managing the day-to-day operations of the company. Defendant Martin-Buresh is a Caucasian Female.  At all material times, Plaintiffs reported directly to Martin-Buresh.

## III.  FACTUAL ALLEGATIONS

6. On or about October 1, 2003, shortly after Mr. Tellez moved to the United States, Defendants hired him as a production worker.  Mr. Tellez held that position from October 1, 2003 to on or about July 2011. He was then promoted to Production Lead. Mr. Tellez held that position from July 2011 through March 4, 2014. Defendants then promoted him to Production Supervisor. Mr. Tellez held that position from March 4, 2014 to approximately February 18, 2019. On or about February 18, 2019, Defendants promoted Mr. Tellez to Production Manager. Mr. Tellez held that position from approximately February 18, 2019 through March 15, 2022. On

March 15, 2022, Mr. Tellez was demoted to Plant Engineer. Mr. Tellez held that position from March 15, 2022 until his termination on April 8, 2022.

7. On or about January 20, 2020, Mr. Tellez and Martin-Buresh drove together to meet with a person that Martin-Buresh wanted to hire as a Farm Manager. During the drive, Martin-Buresh hit on Mr. Tellez and encouraged him to start a sexual relationship with Martin-Buresh. Mr. Tellez rejected Martin-Buresh's advances.

8. Notwithstanding Mr. Tellez's rejection of Martin-Buresh's advances on January 20, 2020, Martin-Buresh's advancements continued over the following months. For example, Martin-Buresh would call Mr. Tellez at home after hours and on weekends, inquire as to the status of his relationship with his wife and more.

9. On or about November 23, 2020, Defendants hired Ms. Diaz as a Production Associate. Because she is bilingual and had prior HR experience, on or about February 2021, Defendants promoted Ms. Diaz to a Human Resources generalist position.

10. The intent of the promotion was to help facilitate Defendant Wild Harvest's participation in the H2A program; a federal program whereby workers from Mexico and other parts of Latin America can work in the United States for several months with a work . Prior to Ms. Diaz's promotion, Wild Harvest did not participate in the H2A program.

11. Defendants did not train Ms. Diaz in her new HR job functions and took steps to undermine her work because of her race and perceived national origin. For example, another HR professional, Wendy Brinkley (hereinafter "Brinkley") who Ms. Diaz was supposed to assume duties from, refused to turn over those responsibilities and failed to property train Ms. Diaz. On or about April 2021, Ms. Diaz let Martin-Buresh know that she felt she was being set up to fail by colleagues, like Brinkley, who were undermining her work. Martin-Buresh dismissed Ms. Diaz's concerns and conceded that race or perceived national origin was a likely a factor in her concerns. Martin-Buresh told Diaz that people didn't want her to succeed in the role because she was a "Brown girl." However, Martin-Buresh did nothing to correct the discriminatory conduct of her subordinates. Ms. Diaz reported the discriminatory treatment and admission by Martin-

Buresh to HR consultant Tammy Trout, who worked for a third-party HR consultant Oregon Manufacturing Extension Partnership, Inc. (hereinafter, "OMEP")

12. In the Spring of 2021, Mr. Tellez and his wife divorced. Around that time Mr. Tellez and Ms. Diaz developed a close friendship. Early in their friendship, in the spring of 2021, Martin-Buresh confronted Mr. Tellez about his friendship with Ms. Diaz and asked if they were dating. He said they were not. Martin-Buresh renewed her romantic interest in Mr. Tellez. She also told him that she believed Ms. Diaz was bad for him and that she could take advantage of him in some way. Mr. Tellez again rebuffed Martin-Buresh's advances. Soon after, Mr. Tellez and Ms. Diaz's friendship turned romantic, and they started dating.

13. On or about July 2021, Martin-Buresh called a meeting with Ms. Diaz to discuss her relationship with Mr. Tellez. Martin-Buresh informed Ms. Diaz she knew that they were dating. Jealous of their relationship, Martin-Buresh told Ms. Diaz that it wasn't a good idea for them to date Mr. Tellez because he had just gotten out of a bad relationship and was likely depressed. Martin-Buresh told Ms. Diaz that she thought she was "taking advantage" of Mr. Tellez by dating him in such "vulnerable state." Ms. Diaz rejected Ms. Martin-Buresh's comments and let her know that their relationship was appropriate and would not impact their work.

14. When Martin-Buresh learned that Mr. Tellez and Ms. Diaz were dating, she made critical statements to Mr. Tellez about his relationship with Ms. Diaz, too. Martin-Buresh's jealousy was so obvious that co-workers came to both Mr. Tellez and Ms. Diaz and informed them that Martin-Buresh was unhappy that they were dating and jealous of their relationship.

15. On or about February 4, 2022, Mr. Tellez became concerned that Defendants were engaged in discriminatory pay practices that violated state or federal pay equity laws, and other anti-discrimination employment laws and called a meeting with Martin-Buresh to discuss his concerns. The specific catalyst for the meeting was that Martin-Buresh had recently hired at a white U.S. citizen employee and a Cuban American U.S. citizen employee, both of whom were making more than much more experienced and higher skilled employees who were not citizens

and/or Hispanic. Martin-Buresh was initially resistant to giving raises to the more experienced Hispanic employees, most of whom were not citizens, but she ultimately agreed by the end of the meeting that they should be paid *at least* as well as the new white employees and new Cuban American US citizen employee, based on their experience and skillset.

16. On February 11, 2022, Plaintiffs secured permission to take Monday February 14, 2022 off due to a medical appointment for Mr. Tellez in Portland, Oregon. Defendants approved the day off.

17. On February 11, 2022, Mr. Tellez met with Martin-Buresh and other managers, Daniel Rivera and Nate Couture (hereinafter "Couture"), to review the schedule for the following Monday due to the previously approved absence on February 14, 2022.

18. On Sunday, February 13, 2022, Mr. Tellez received several text messages from Hispanic non-citizen employees stating that they would not be showing up to work the following day to join a peaceful protest seeking fair wages and opposing workplace discrimination. Mr. Tellez immediately alerted both Martin-Buresh and Couture of the situation by text message.

19. On February 14, 2022, numerous employees of Defendant Wild Harvest participated in a national protest called "A Day Without Immigrants." The focus on the protest was to protect immigrants by finding paths for them to secure U.S. Citizenship, fair wages, safe working conditions, and to oppose discrimination based on race and national origin. The protest organizers encouraged all immigrants to not consume any services, to not go to work and not go to school on February 14. Numerous employees of Defendant Wild Harvest —mostly Brown, Hispanic, Spanish speaking workers who were not from the United States, participated in the protest and did not show up to work on February 14th as part of that protest.

20. Neither Mr. Tellez nor Ms. Diaz participated in the protest. Instead, having already been excused from work, they attended their previously scheduled medical appointment in Portland, Oregon.

21. On February 15, 2022, Mr. Tellez and Ms. Diaz returned to work. Martin-Buresh was furious with both them and with the workers who had not come to work the prior day.

Martin-Buresh accused both Plaintiffs of being complicit with the workers who didn't attend work to promote immigrant rights and protest/oppose discrimination based on race and national origin and demanded to know where they were. Both told her that they were at the medical appointment, which she had already known.

22. On February 15, 2022, Martin-Buresh accused Mr. Tellez of not being truthful about his involvement in the protest. Martin-Buresh accused him of skipping work to support the workers. Mr. Tellez reminded Martin-Buresh that he was absent from work only because of a medical appointment that she had previously approved. He also reminded her that he had informed her as soon as he learned that workers might not show up to protest. Mr. Tellez also told her that he wanted to stay neutral on the matter since he, like the workers, was also a Hispanic immigrant and, while he didn't agree with skipping work, he supported what the protest stood for; immigrant rights, fair wages and non-discrimination. Martin-Buresh said he could not stay neutral and ordered Mr. Tellez to investigate the private lives of the missing workers, including whether they sent their kids to school the day before and if their spouses went to work. When Mr. Tellez refused to do so, Martin-Buresh accused him, and the rest of the Hispanic employees who missed work, of sabotaging her company.

23. On February 15, 2022, Martin-Buresh also accused Ms. Diaz of not being truthful about her involvement in the walkout and told Ms. Diaz that she was disloyal to the company because she assumed she was supportive of the workers attending the protest. She further accused Ms. Diaz of going to the medical appointment as a form of protest against low wages and discrimination. Martin-Buresh asked Ms. Diaz, too, to investigate the protest activities of the workers who did not come to work, including whether their kids went to school, and whether other employers in the area had similar issues. She ordered Ms. Diaz to contact Ms. Diaz's sister who worked for another company's HR department to obtain information about whether their Hispanic workers had also been absent.

24. In the wake of the February 14, 2022 protest opposing discrimination and unfair wages, Martin-Buresh started a campaign of retaliation against anyone who she perceived to be

associated with the action.  For example, on February 16, 2022, Mr. Tellez learned that a Quality Control employee was telling employees who participated in the protest that Martin-Buresh was going to terminate their employment for being disloyal to Defendant. Mr. Tellez told the employees to speak with Human Resources, who then reported the threats to Ms. Diaz.

25. That same day, on February 16, 2022, Ms. Diaz informed Martin-Buresh of the threats and complaints and advised her that Martin-Buresh should make it clear that employees would not be terminated or retaliated against, and to admonish the Quality Control employee for making threats. Martin-Buresh agreed to schedule a meeting, that same day, with those who attended the protest. Ms. Diaz was asked to interpret for the meeting and did so. Mr. Tellez was also requested to attend the meeting.

26. The meeting took place on the afternoon of February 16, 2022 and did not go as Ms. Diaz had anticipated. Instead of reinforcing that workers would not be retaliated against for opposing discrimination or unlawful pay practices or working conditions, Martin-Buresh took the opposite approach. Martin-Buresh informed employees that she saw their protest as an attack on her company and demanded to know if other family members of theirs also participated in the protest. Numerous employees explained that engaging in peaceful protest was important to them and that the purpose of the protests was to support immigrants in receiving fair wages, fair treatment and to stop race and national origin discrimination against workers, mostly of Hispanic origin. Employees reinforced that they had no intent to harm Defendants but merely wanted to advocate for fair, non-discriminatory treatment of workers, safe working conditions and fair wages.  Consistent with the discussion the prior week between Mr. Tellez and Martin-Buresh about pay equity, another worker, a Brown, immigrant woman, stated that she had worked very hard for two years for Defendants and just found out that they had recently hired at least one white American citizen who had much less experience yet was making more money that she did for the same work. The worker tearfully asked if she had done something wrong. Martin-Buresh didn't know how to respond and asked Mr. Tellez to address the worker. He told the worker that he and Martin-Buresh would work on any pay equity problems that arise, as they had already

started to do this, and that they valued and appreciated all of them. As the meeting closed, the workers apologized for putting Martin-Buresh in difficult place by their protest. Martin-Buresh accepted their apology. Martin-Buresh asked them for more notice if they attended other protests in the future. The employees agreed to provide additional notice if they protested again.

27. After the meeting, Martin-Buresh was agitated. Calling the meeting "a disaster," Martin-Buresh angrily accused Ms. Diaz, who had merely acted as interpreter, and Mr. Tellez, of not supporting her in the meeting and being on the side of the workers. Martin-Buresh was incredulous that Mr. Tellez would still consider giving a raise to the workers based on their complaints of pay inequities. She told Ms. Diaz that it was her fault the employee complained about pay equity issues and mimicked the Brown immigrant employee who cried when reporting discriminatory pay practices. Referring to the plan which would put Defendants in compliance with pay equity laws, Martin-Buresh informed Mr. Tellez and Ms. Diaz that, even though she had previously agreed to provide raises to comply with the law, she would now be making some additional negative adjustments based on the conduct of the workers in the meeting.

28. After the meeting, Martin-Buresh's behavior deteriorated. On February 17, 2022, Martin-Buresh approached Mr. Tellez in the warehouse and, with a raised voice, angrily lashed out at him about the protest and the meeting the day before. Martin-Buresh informed Mr. Tellez that she was still angry with him and the workers and that they had thought they had won but had not. When a worker who had been clapping during the February 16 meeting in support of workers' rights walked by during this conversation, Martin-Buresh physically lunged at them and tried to physically assault the worker. Mr. Tellez restrained Martin-Buresh from attacking the worker. Martin-Buresh then lunged at another worker and, again, had to be held back. Martin-Buresh lashed out at Mr. Tellez, again, for supporting and protecting Hispanic immigrant workers.

29. A few days later, on or about February 22, 2022, Mr. Tellez, was on a lunch break. While on break, he learned that Martin-Buresh had, again, tried to assault another worker who had attended the February 16th meeting and had them physically backed into a corner. Mr.

Tellez rushed back to work and found Martin-Buresh and the worker outside of Mr. Tellez's office, with Martin-Buresh screaming at the worker for attending the protest. In order to protect the employee, Mr. Tellez asked the worker to return to work. He then tried to calm Martin-Buresh down, again.

30. That same day, on February 22, 2022, Martin-Buresh approached Mr. Tellez, yet again, to express her anger with him and the immigrant workers who attended the protest and advocating for pay equity and workers' rights during the February 16, 2022 meeting. Martin-Buresh then told Mr. Tellez that she needed to tell him something in private and away from the workplace. Mr. Tellez was immediately suspicious and told her he would rather know whatever she had to say now, at work. Martin-Buresh then pulled Mr. Tellez close, forcibly hugged him and, with her lips touching his ear, whispered "I love you." Mr. Tellez pulled away and Martin-Buresh left the room, smiling as she walked away.

31. On March 4, 2022, Martin-Buresh entered Ms. Diaz's office and asked personal questions about Ms. Diaz's brothers, who Martin-Buresh had requested a year earlier to work for Defendant Wild Harvest in the H2A program. Martin-Buresh stated she didn't want to hire her brothers anymore since she thought they would sabotage the company, too. She ordered Ms. Diaz to take them off the list, and Ms. Diaz complied with her request.

32. On March 7, 2022, Martin-Buresh met with Ms. Diaz and told her she had changed her mind and wanted her brothers to work for the company, after all. Ms. Diaz told her that it was too late and they had just accepted employment elsewhere after Ms. Diaz took them off the list. Martin-Buresh then berated Ms. Diaz for being in a romantic relationship with Mr. Tellez. Referring to the February 14 protest and the February 16 meeting, she again accused Ms. Diaz and Mr. Tellez of improprieties with the company and for supporting the rights of the workers. Ms. Diaz told Martin-Buresh that she didn't feel comfortable working in human resources for a company that discriminates against its employees and causes them to be fearful. On March 8, 2022, Defendants demoted Ms. Diaz.

33. On March 8, 2022, the same day as Ms. Diaz's demotion, a worker came into Mr.

Tellez's office in a panic and reported that Martin-Buresh was violently chasing her around the floor and yelling at her for her part in the protest and the February 16 meeting. Martin-Buresh then barged in the room, fists clenched, and paced toward the worker. Mr. Tellez sent the worker back to the floor and asked Martin-Buresh what was wrong. Martin-Buresh told him that the workers were plotting something again and accused Mr. Tellez of defending the workers and being on their side by asking them for raises. Martin-Buresh told Mr. Tellez the workers didn't deserve raises because they don't even speak English and that Mr. Tellez didn't care about the company that he needed to be on her side, not the side of her employees. She told him he should be doing more to identify and punish the guilty workers.

34. In the weeks following March 8, 2022, Defendants subjected Ms. Diaz to heightened performance scrutiny. This included prohibiting her from providing translation for any Spanish speaking immigrant co-workers; something Ms. Diaz had done prior to her promotion to HR. This also included closely monitoring her comings and goings and who she associated with, including tracking what time she came into the office, went on breaks, took lunch, and whether she had eaten lunch or spoke with Mr. Tellez. Martin-Buresh also increased her sexual harassment of Mr. Tellez. For example, on March 11, 2022, Martin-Buresh walked into Mr. Tellez's office, sat down next to him and rubbed his inner thigh in a sexual manner, abruptly stopping when another co-worker entered the room.

35. Because of the ongoing course of discriminatory conduct and harassment by Defendants, Mr. Tellez asked to be re-assigned to a different position. Mr. Tellez and Martin-Buresh discussed a new position for Mr. Tellez as an Engineer and that the hours for the position would be from 6 AM to 3:30 PM, which would allow him to attend school. In March 2022, Mr. Tellez started the new position with the new hours.

36. On April 4, 2022, Mr. Tellez was abruptly informed by Couture and an external HR partner, John Valachovic of OMEP, that the hours of the position would now be a 9 AM to 6:30 PM schedule; a material change to the terms and conditions of Mr. Tellez's employment. Mr. Tellez informed them he disagreed with that schedule, and that Martin-Buresh had promised

him the schedule would be 6 AM to 3:30 PM.

37. On April 8, 2022, Defendants terminated Mr. Tellez's employment.

38. Also on April 8, 2022, Ms. Diaz, who had not been aware of Mr. Tellez's termination, left a voicemail with human resources professional Brinkley reporting that a white manager, Coulter, had been retaliating against her since her demotion. The retaliation included separating her from workers who had engaged in the protest and modifying Diaz's job responsibilities, including removing some of her training obligations.

39. On April 11, 2022, Ms. Diaz reported to work and was met by Coulter, who informed Diaz that she was being terminated effective immediately.

40. As a direct and proximate result of Defendants' conduct alleged herein, Plaintiffs have suffered loss of employment, emotional distress, mental anguish, loss of self-esteem and dignity. Plaintiffs have also lost wages and fringe benefits. Plaintiffs are entitled to economic and non-economic damages in an amount to be proved at trial.

41. Plaintiffs are entitled to reasonable attorney fees and costs pursuant to ORS 659A.885, ORS 20.107 and 42 USC §2000e-5(k).

42. Defendants' conduct was carried out with wanton or reckless disregard for Plaintiffs' civil rights. Punitive damages should be assessed against all Defendants to deter individual Defendants from such conduct in the future.

43. Plaintiffs have dual filed claims with BOLI and EEOC relating to the same acts alleged above and has received right to sue letters from BOLI authorizing them to proceed on their claims. Plaintiffs have filed this complaint within 90 days of receipt of their right to sue letters from BOLI.

/ / /

/ / /

/ / /

/ / /

/ / /

**FIRST CLAIM FOR RELIEF**
**(42 U.S.C. § 2000e; Title VII of Civil Rights Act: Race, National Origin and Sex Discrimination)**
**(Against Defendant Wild Harvest)**

44. Plaintiffs reallege paragraph 1 through 43 as though fully set forth herein.

45. Defendant Wild Harvest violated 42 U.S.C. 2000e-2(a)(1) by subjecting Plaintiffs to discriminatory terms and conditions of employment because of Plaintiffs' race and national origin. Defendant Wild Harvest also violated 42 U.S.C. 2000e-2(a)(1) by subjecting them to a race and national origin based hostile work environment that was severe and pervasive and both subjectively and objectively offensive and that changed the terms and conditions of Plaintiffs' employment. The discriminatory terms and conditions of employment and hostile work environment was both because of Plaintiffs' race and national origin and also because of their perceived association with the race and national origin of many of Defendants workers who had engaged in peaceful protests advocating for fair wages, safe workplaces and non-discrimination. Ultimately, the race and national origin-based discrimination by Defendants resulted in and caused Plaintiffs' termination.

46. Defendant Wild Harvest further violated 42 U.S.C. 2000e-2(a)(1) by subjecting Mr. Tellez to a sex based hostile work environment that was severe and pervasive, both subjectively and objectively offensive and which modified the terms and conditions of his employment and caused Mr. Tellez's termination. Defendant Wild Harvest further violated 42 U.S.C. 2000e-2(a)(1) by subjecting Mr. Tellez to *quid pro quo* sexual harassment that modified the terms and conditions of his employment and caused Mr. Tellez's termination.

47. Defendant Wild Harvest further violated 42 U.S.C. 2000e-2(a)(1) by discriminating against both Plaintiffs for their association with each other and with the race and national origin of the workers who advocated for fair wages, safe workplaces and non-discrimination. Defendant Wild Harvest also violated 42 U.S.C. 2000e-2(a)(1) by discriminating against Ms. Diaz for her part in interfering with Martin-Buresh plan to sexually harass Mr. Tellez.

### SECOND CLAIM FOR RELIEF
### (42 U.S.C. § 2000e; Title VII of Civil Rights Act: Retaliation)
### (Against Defendant Wild Harvest)

48. Plaintiffs reallege paragraphs 1 through 43 and 45 through 47 as though fully set forth herein.

49. Defendant Wild Harvest violated 42 U.S.C. 2000e-3(a) by retaliating against Mr. Tellez and, by association, Ms. Diaz, for Mr. Tellez's opposition to sex discrimination, including sexual harassment, by Defendants.

50. Defendant Wild Harvest further violated 42 U.S.C. 2000e-3(a) by retaliating against Plaintiffs for their opposition of Defendants race and national origin discrimination against its workers, including its discriminatory pay practices, physical harassment and hostile work environment harassment of Hispanic and non-US citizen employees.

### THIRD CLAIM FOR RELIEF
### (O.R.S. 659A.030: Race, National Origin and Sex Discrimination)
### (Against Defendant Wild Harvest)

51. Plaintiff realleges paragraphs 1 through 43 as though fully set forth herein.

52. Defendant Wild Harvest violated ORS 659A.030(a)-(b) by subjecting Plaintiffs to discriminatory terms and conditions of employment because of Plaintiffs' race and national origin. Defendant Wild Harvest also violated ORS 659A.030(a)-(b) by subjecting them to a race and national origin based hostile work environment that was severe and pervasive and both subjectively and objectively offensive and that changed the terms and conditions of Plaintiffs' employment. The discriminatory terms and conditions of employment and hostile work environment was both because of Plaintiffs' race and national origin and also because of their perceived association with the race and national origin of many of Defendants workers who had engaged in peaceful protests advocating for fair wages, safe workplaces and non-discrimination. Ultimately, the race and national origin-based discrimination by Defendants resulted in and caused Plaintiffs' termination.

53. Defendant Wild Harvest further violated ORS 659A.030(a)-(b) subjecting Mr. Tellez to a sex based hostile work environment that was severe and pervasive, both subjectively and objectively offensive and which modified the terms and conditions of his employment and caused Mr. Tellez's termination.  Defendant Wild Harvest further violated ORS 659A.030(a)-(b)  by subjecting Mr. Tellez to *quid pro quo* sexual harassment that modified the terms and conditions of his employment and caused Mr. Tellez's termination.

54. Defendant Wild Harvest further violated ORS 659A.030(a)-(b) by discriminating against both Plaintiffs for their association with each other and with the race and national origin of the workers who advocated for fair wages, safe workplaces and non-discrimination. Defendant Wild Harvest also violated ORS 659A.030(a)-(b)) by discriminating against Ms. Diaz for her part in interfering with Martin-Buresh plan to sexually harass Mr. Tellez.

**FOURTH CLAIM FOR RELIEF**
**(O.R.S. 659A.030(f): Retaliation)**
**(Against Defendant Wild Harvest)**

55. Plaintiffs realleges paragraphs 1 through 43 and paragraphs 52 through 54 as though fully set forth herein.

56. Defendant Wild Harvest violated ORS 659A.030(f) by retaliating against Mr. Tellez and, by association, Ms. Diaz, for Mr. Tellez's opposition to sex discrimination, including sexual harassment, by Defendants.

57. Defendant Wild Harvest further violated ORS 659A.030(f) by retaliating against Plaintiffs for their opposition of Defendants race and national origin discrimination against its workers, including its discriminatory pay practices, physical harassment and hostile work environment harassment of Hispanic and non-US citizen employees.

/ / /

/ / /

/ / /

## FIFTH CLAIM FOR RELIEF
### (ORS 659A.030(1)(g)-Aiding and Abetting Discrimination)
### (Against Defendant Martin-Buresh)

58. Plaintiffs reallege paragraphs 1 through 43, 52 through 54 and 56 through 57 as though fully set forth herein.

59. Defendant Martin-Buresh aided, abetted, incited, compelled or coerced Defendant Wild Harvest to commit violations of ORS 659A.030 in violation of ORS 659A.030(1)(g) by causing Defendant Wild Harvest to discriminate, retaliate and terminate against Plaintiffs because of their race, national origin, and for opposing unlawful practices under Chapter 659A. Defendant Martin-Buresh knowingly gave assistance or encouragement to Defendant Wild Harvest and shared a common intent with Defendant Wild Harvest to cause them to discriminate, retaliate and terminate Plaintiffs employment. To that end, Defendant Martin-Buresh intentionally and knowingly caused Defendant Wild Harvest commit violations of ORS 659A.030.

60. At all material times, Defendant Martin-Buresh owed duties of loyalty, good faith and fair dealing to Defendant Wild Harvest which proscribed engaging in conduct that was contrary to the best interests of Defendant Wild Harvest. Defendant Martin-Buresh also had a duty to obey the Oregon employment laws set forth in ORS 659A, pay equity laws and refrain from discriminatory practices. Defendant Martin-Buresh breached those duties by aiding, abetting, inciting, compelling or coercing Defendant Wild Harvest to commit violations of ORS 659A.030 in violation of ORS 659A.030(1)(g).

## SIXTH CLAIM FOR RELIEF
### (ORS 659A.199)
### (Against Defendant Wild Harvest)

61. Plaintiffs reallege paragraphs 1 through 43 as though fully set forth herein.

62. Defendant retaliated against Plaintiffs in violation of ORS 659A.199 because

Plaintiffs in good faith reported information that they believed was evidence of a violation of a state or federal law, rule or regulations. This includes state and federal laws governing the right of workers to protest, the right to pay equity, the right to be free from workplace violence and other state and federal anti-discrimination laws.

**WHEREFORE**, Plaintiffs request a trial by jury and requests the Court should grant judgment in favor of Plaintiffs and against all Defendants and grant the following relief:

1. On all Plaintiffs' Claims 1-4 and 6, an award of economic damages including lost wages, lost fringe benefits, and pre-judgment interest in an amount to be determined at trial; Plaintiffs are also entitled to reinstatement of their employment or, in the alternative, an award of lost future wages and benefits in an amount to be determined at trial.

2. On all Plaintiffs' Claims for relief, an award of damages for mental and emotional distress and other compensatory damages in an amount to be determined at trial, and an award of punitive damages;

3. On all Plaintiffs' Claims for relief, an award of attorney fees, expert witness fees, costs and disbursements pursuant to ORS 659A.885, ORS 20.107 and 42 USC §2000e-5(k);

4. On all Plaintiffs' Claims for relief, a Declaration that all Defendants violated Plaintiffs' rights to be free from discrimination and retaliation based on sex, national origin race and for opposing pay equity laws and employment discrimination laws that prohibit race and national origin discrimination

/ / /

/ / /

/ / /

/ / /

/ / /

5. Such further or alternative relief in favor of Plaintiff as the Court deems appropriate.

DATED this 14th day of April, 2023.

By   s/Matthew C. Ellis
**MATTHEW C. ELLIS**
OSB No. 075800
matthew@employmentlawpdx.com
(503) 345-5497

**SHAWN M. O'NEIL**
OSB No. 913880
smo@shawnoneil.com
(503) 570 8755

Of Attorneys for Plaintiffs

Plaintiffs demand a trial by jury.

By   s/Matthew C. Ellis
**MATTHEW C. ELLIS**
OSB No. 075800
(503) 345-5497